UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LINDA ANDREW,

    Plaintiff,

v.                                         Case No. 6:16-cv-1061-Orl-37GJK

RADIANCY, INC.; PHOTOMEDEX,
INC.; and DOLEV RAFAELI,

    Defendants.

## ORDER

This cause is before the Court on the Defendants Dolev Rafaeli's and Photomedex, Inc.'s Motion to Dismiss the First Amended Complaint and Memorandum of Law in Support Thereof (Doc. 53), and Plaintiff's Opposition to Motion to Dismiss First Amended Complaint Against Defendants Rafaeli and Photomedex, Inc., and Incorporated Memorandum of Law (Doc. 55).

### I.     BACKGROUND

On February 14, 2017, Plaintiff Linda Andrew named three Defendants—Radiancy, Inc. ("**Radiancy**"), Photomedex, Inc. ("**Parent Company**"), and Dolev Rafaeli ("**Rafaeli**"), in her Amended Complaint in this product liability action, which concerns a "no! no!" hair removal device, Model 8800 ("**Device**").[1] (*See* Doc. 52.) After Radiancy's subsidiary—non-party Radiancy (Israel) Ltd. ("**Radiancy (Israel)**")—manufactured the

---

[1] Based on diversity jurisdiction, the Defendants removed the action to this Court from the Ninth Judicial Circuit in and for Orange County, Florida. (Doc. 1.)

-1-

Device, Radiancy sold it to Plaintiff's spouse in Florida in December 2012. (*See* Doc. 52, ¶¶ 4, 6, 10; *see also* Doc. 39-7, ¶¶ 6–8.)

Plaintiff is a breast cancer survivor who endured a "partial mastectomy of her right breast" and "axillary lymph node dissection" in 2000. (*See* Doc. 52, ¶16.) As a result, she suffers from secondary lymphedema ("**Condition**"); however, in December 2012—when her spouse gave her the Device as a Christmas gift—Plaintiff alleges that her "extremities were free from edema."[2] (*See id*.) That changed in mid-January 2013, when she allegedly used the Device on her right arm. (*See id*.) Although Plaintiff immediately stopped using the Device when she "felt a tingling or pins and needles sensation," by the next day the Condition had returned in her right arm ("**Recurrence**"). (*See id*. ¶¶13–25.) Despite extensive medical treatment and self-care, the Recurrence has been largely unrelieved. (*See id*. (alleging that the Recurrence "remains a major problem in her life").)

Plaintiff alleges that the proximate cause of the Recurrence was the "unperceived high temperature generated by the Device"—at least 451°F—which was "transferred along the hair shaft through the surface of the skin" ("**Heat**"). (*See id*. ¶ 28.) Plaintiff contends that Defendants "knew full well that the Device had the capacity to burn the user." (*See id*. ¶38.) Further, the Defendants allegedly knew or should have known that the Heat produced by the Device was "more than sufficient to literally 'fry' a lymphatically obstructed limb." (*See id*. ¶¶ 39, 40.)

---

[2]According to the U.S. National Library of Medicine, "edema" is swelling caused by excess fluid in body tissues, and lymphedema is the "build-up of fluid in soft body tissues when the lymph system is damaged or blocked." *See* https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0025392 (visited April 6, 2017).

Despite Defendants' alleged knowledge of the risks the Device posed for a large group of customers like Plaintiff, and due to marketing and profit concerns, the Defendants allegedly chose to: (1) provide inadequate and inappropriate warnings concerning only the appearance of a consumer's skin; (2) withhold warnings to the large number of consumers at risk of lymphedema that "no hair removal device which generates heat is suitable for vascularly impaired individuals;" and (3) market and advertise the Device as "safe and effective" and "Doctor recommended." (*See id*. ¶¶ 36, 43; *see also id*. ¶¶ 51, 52, 55.) As such, Plaintiff alleges that the Device was defective, and all three Defendants are jointly and severally liable to her based on strict liability and negligence. (*See id*. ¶¶ 54, 55; *see also id*. ¶¶ 10–14, 17, 24–25, 28, 32–39, 43, 48–62.)

Radiancy answered the Amended Complaint and admitted that: (1) it "markets, advertises, and distributes" the Device in the United States; (2) it is a subsidiary of Parent Company; and (3) Rafaeli is its CEO and President. (*See* Doc. 58, ¶ 2, 4, 6.) Parent Company and Rafaeli ("**Moving Defendants**") did not answer; rather, they jointly moved to dismiss Plaintiff's negligence and strict liability claims against them for lack of personal jurisdiction and failure to state a claim. (Doc. 53.) Plaintiff responded (Doc. 55 ("**Response**")), and the matter is now ripe for adjudication.

## II.  LEGAL STANDARDS

When a plaintiff fails to establish "a prima facie case of personal jurisdiction" in her complaint, defendants may move to dismiss under Rule 12(b)(2). *See Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). There are two requirements for a prima facie case: (1) first, a basis for jurisdiction must exist under Florida's Long-Arm

Statute, Fla. Stat. § 48.193 ("**FLAS**"); and (2) second, the defendants' contacts with Florida must be sufficient to satisfy the Due Process Clause of the Fifth Amendment to the U.S. Constitution ("**DP Clause**").[3] *See Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 500–02 (Fla. 1989); *see also Bristol Myers Squibb Co. v. Superior Court of Cal., San Francisco, Cnty.*, No. 16-466, 2017 WL 2621322, at *11 (U.S. June 19, 2017) (noting that the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by federal courts that the Fourteenth Amendment imposes on state courts).

If the complaint states a prima facie case, then a defendant must support its Rule 12(b)(2) motion with non-conclusory affidavits challenging the jurisdictional allegations and showing that personal jurisdiction is absent. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). If the affidavits are sufficient, then the burden shifts back to the plaintiff to establish her prima facie case with evidence sufficient to withstand a motion for directed verdict. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (explaining that the burden of production shifts to the plaintiff when the defendant makes an evidentiary showing "of the inapplicability of the long-arm statute").

"[T]he issue of whether personal jurisdiction is present is a question of law" that courts must resolve on a claim-by-claim basis. *See Oldfield v. Pueblo De Bahia Lora, S.A.*,

---

[3] Under the DP Clause, a court may not exercise personal jurisdiction over a non-resident defendant unless such defendant has sufficient "minimum contacts with [the court's forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (2003)).

558 F.3d 1210, 1217 (11th Cir. 2009). Courts must accept well-pled and unrefuted factual allegations as true. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). But if there is a conflict in the record, courts must "construe all reasonable inferences in favor of the non-movant plaintiff" and deny the Rule 12(b)(2) motion if the "inferences are sufficient to defeat a motion for judgment as a matter of law." *See PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 809–10 (11th Cir. 2010). If the necessary inferences do not establish a prima facie case, then courts are "obligated" to grant the Rule 12(b)(2) motion and dismiss any unsupported claims without prejudice. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).

### III. DISCUSSION

Under Florida's Long Arm Statute ("**FLAS**"), a party subjects itself to the specific jurisdiction of Florida courts "for any cause of action arising from" certain enumerated acts, if the acts are done by the party "personally or through an agent." *See* Fla. Stat. § 48.193(1)(a). The enumerated acts include "[c]ommitting a tortious act" in Florida and causing injury to a plaintiff in Florida under certain circumstances. *Id.* §§ 48.193(1)(a)(2) & (6). Where a plaintiff asserts a claim that a defective product purchased in Florida caused her harm in Florida, the court may exercise specific personal jurisdiction over the manufacturer, wholesaler, and distributor who intentionally caused the product to enter Florida.[4] *See Wetzel v. Fisherman's Wharf of Pompano Beach, Inc.*,

---

[4] The reach of FLAS is a question of Florida law, which this Court must resolve "as would the Florida Supreme Court." *See Louis Vuitton*, 736 F.3d at 1352. In Florida, FLAS must be "strictly construed." *See Thomas Jefferson Univ. v. Romer*, 710 So. 2d 67, 71 (Fla. 4th DCA 1998).

771 So. 2d 1195, 1198–99 (Fla. 4th DCA 2000) (finding that personal jurisdiction existed based on defendant's "hands-on contact with the goods before their arrival in Florida").[5]

**A.     The Parent Company**

Parent Company is a Nevada corporation with its principal place of business in Pennsylvania. (*See* Doc. 52, ¶ 3; *see also* Doc. 8, ¶ 10; Doc. 44, pp. 32–33.) The Parent Company "does not have operations, facilities, employees or offices in the state of Florida" (Doc. 8, ¶ 14), but Plaintiff alleges that FLAS is met because the Parent Company caused her injury and committed tortious acts in Florida by marketing, advertising, and distributing the Device in Florida (Doc. 52, ¶¶ 6, 8). Such allegations satisfy Plaintiff's initial pleading burden; thus, the Moving Defendants were required to refute Plaintiff's allegations with non-conclusory affidavits or declarations.

The Moving Defendants did not file affidavits responding to the jurisdictional allegations set forth in Plaintiff's Amended Complaint (*see* Doc. 53), but they previously filed an affidavit and declarations from Rafaeli in relation to the Notice of Removal (Doc. 1), a Motion to Dismiss the initial Complaint (Docs. 7, 11), and a Response in Opposition to Plaintiff's Motion to Amend (Doc. 39). (Doc. 2 ("**Removal Affidavit**");

---

[5] *See Brown v. Bottling Grp., LLC*, 159 F. Supp. 3d 1308, 1311–12 (M.D. Fla. 2016) (noting that the DP Clause is satisfied in a product liability action when distribution of the product in a particular forum is intended by the non-resident defendant); *Cubbage v. Novartis Pharm. Corp.*, No. 5:16-cv-129-Oc-30PRL, 2016 WL 3595747, at *3 (M.D. Fla. Jul. 5, 2016) (finding FLAS satisfied where the defendant distributed product in Florida and plaintiff was injured in Florida); *Davis v. Pyrofax Gas Corp.*, 492 So. 2d 1044, 1045–46 (Fla. 1986) (noting that personal jurisdiction in a product liability action may be had "where the defendants are allegedly engaged in solicitation activities and promoting or distributing" the product in Florida).

Doc. 8 ("**Rafaeli Affidavit**"); Doc. 39-7 ("**Rafaeli Declaration**").) The Court has considered the evidence specifically cited in the MTD.[6] (*See* Doc. 53, p. 17 (citing the Rafaeli Affidavit); *id*. at 25 (asserting that an uncited "affidavit of Defendant Rafaeli is complete and comprehensive").)

According to the Rafaeli Declaration: (1) the Device was distributed by Radiancy and was manufactured by a related company that is not a party to this action (*see* Doc. 39-7, ¶¶6–9);[7] and (2) Parent Company did not manufacture, distribute, or sell the Device, and it had no "involvement with the [D]evice's development, labeling, marketing, advertising, design, or assembly." (*See* Doc. 39-7, ¶¶ 10, 33; *see also* Doc. 8.) Although Plaintiff does not refute these facts, she does argue that FLAS is nonetheless satisfied. (*See* Doc. 55, pp. 20–21.) The Court disagrees.

The mere fact that the distributor of a product is a subsidiary "is insufficient to form a basis for the assertion of personal jurisdiction" over the subsidiary's parent company. *See Fla. v. Am. Tobacco Co.*, 707 So. 2d 851, 854–55 (Fla. 4th DCA 1998); *see also Hoescht Group v. Lozano*, 813 So. 2d 180, 181 (Fla. 3d DCA 2002) ("The activities of a subsidiary cannot be imputed to the parent corporation for purposes of subjecting the

---

[6] The Court also has considered additional material filed by Plaintiff and the arguments made at the hearing on September 12, 2016. (*See* Doc. 24; Doc. 37, pp. 41–53 (providing a copy of the "User Manual"); *id*. at 55–68 (providing a copy of the "Quick Start Manual"); *id*. at 71–74 (providing copies of advertisements); Doc. 44, pp. 24–28 (providing a copy of the Defendants' initial disclosures); *id*. at 30–46 (providing a copy of a Form 10-K for Parent Company).)

[7] (*See also* Doc. 52, ¶ 4 (alleging that Radiancy sells the Device "directly to consumers through online and mass media advertising" and in retail outlets); *id*. ¶ 10 (alleging that the Device was purchased "directly from Radiancy").)

latter to long-arm jurisdiction" in Florida.). Personal jurisdiction over a parent company does not exist unless the parent company exercises "control to the extent the subsidiary 'manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.'" *See Vantage View, Inc. v. Bali E. Dev. Corp.*, 421 So. 2d 728, 733 (Fla. 4th DCA 1982) (quoting *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 181 (5th Cir. 1981)).[8] Plaintiff's contentions that Radiancy's revenue is "upstreamed" to Parent Company and Parent Company refers to Radiancy as a "business segment" do not establish the control required by Florida law. (*See* Doc. 55, p. 21.) Thus, the exercise of personal jurisdiction is not permitted under FLAS.

**B.     Rafaeli**

As with Parent Company, Plaintiff alleges in her Amended Complaint that this Court has personal jurisdiction over Rafaeli—who is a resident of New Jersey—because he injured Plaintiff and committed tortious acts in Florida by marketing, advertising, and causing the Device to be distributed in Florida where it caused injury to Plaintiff. (*See* Doc. 52, ¶¶ 6, 8, 51, 58, 61.) Plaintiff additionally alleges that:

(1)     Rafaeli is an industrial engineer and inventor who serves as CEO of Radiancy and Parent Company (*see id.* ¶¶ 6, 40);

(2)     as the inventor of "several heat generating hair removal devices," Rafaeli had unique and full "knowledge of the dangers" that high temperature

---

[8] *See also Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275–76 (11th Cir. 2005) (affirming dismissal of parent company where plaintiff did not establish sufficient control over subsidiary); *Dev. Corp. of Palm Beach v. WBC Const., LLC*, 925 So. 2d 1156, 1161–62 (Fla. 4th DCA 2006) (same); Mary Babb Morris, J.D., et al., *Foreign Corporations – Presence in Florida of Subsidiary Corporation*, 8B Fla. Jur. 2d Bus. Relationships § 432 (2017).

>   hair removal devices pose to skin (*see id.* ¶¶ 40–42, 51, 53);
>
> (3) Rafaeli "has exerted significant influence" over Radiancy's policies and operations and was "personally involved in developing," marketing, and advertising the Device (*see id.* ¶¶ 48, 51);
>
> (4) Rafaeli "caused the distribution of the Device" to "lymphatically compromised individuals" who he knew would be harmed by the high temperatures produced by the Device (*see id.* ¶ 51);
>
> (5) Rafaeli received "a percentage of the gross sales" of the Device, and as a result, he "prioritized sales and marketing concerns over known safety concerns" (*see id.* ¶¶ 52, 55, 56; *see also* Doc. 44, p. 45).

Rafaeli argues that, under the corporate shield doctrine, the Court cannot exercise personal jurisdiction over him because: (1) Plaintiff's allegations "are based on his actions as a corporate officer in furtherance of Radiancy's business" (Doc. 53, p. 11); (2) "outside of his role as an employee of Radiancy," Rafaeli's "only contact" with Florida "is ownership" of a vacation condominium in Miami (*id.* at 13); (3) Rafaeli is "a non-resident employee [of Radiancy], who worked only outside of Florida" (*id.* at 12); and (4) "[a]ny allegation of wrongdoing by [Rafaeli], which is strongly denied, is at best the actions of an employee and officer of Radiancy" (*id.* at 14 ("**Corporate Shield Argument**")).

Under the corporate shield doctrine, when a corporation commits a tortious act in Florida, its "chief executive officer" is not subject to personal jurisdiction "by virtue of his position." *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993).[9] The "rational" for the

---

[9] In *Doe*, the Florida Supreme Court held that the corporate shield doctrine precluded a Florida court from exercising personal jurisdiction in a negligence action

corporate shield doctrine is:

> The notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.

*Id.* (quoting *Estabrook v. Wetmore*, 529 A.2d 956, 959 (N.H. 1987)). The corporate shield doctrine does not apply where the corporate officer's wrongful conduct occurs when he is physically present in Florida. *See Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012) (clarifying that the corporate shield doctrine applies only to "acts performed by a person exclusively in his corporate capacity [and] *in a foreign state*"); *see also Lane v. XYZ Venture Partners, LLC*, 322 F. App'x 675, 679 (11th Cir. 2009). It also does not protect a corporate officer accused of "fraud or other intentional misconduct." *See Doe*, 620 So. 2d at 1006, n.1.

Rafaeli supports his Corporate Shield Argument with his own averments that: (1) he has not "performed any work related to Radiancy . . . at [his condominium in Florida] between June 1, 2015 and present, or in the State of Florida at any time (Doc. 8, ¶ 26); and (2) in his capacity as President and CEO of Radiancy, he has not maintained or "occupied an office in the State of Florida for purposes of work related to any of the products marketed by Radiancy" (*id.* ¶ 21).[10] Although Plaintiff does not refute these

---

over a corporate officer who averred that "he did not *personally* do anything in Florida: he did not personally operate a business in Florida; commit a tortious act in Florida, or cause injury in Florida." *Doe*, 620 So. 2d at 1006 (noting that the corporate defendant's "allegedly negligent actions are not alleged to have been taken outside his duties" as a corporate officer).

[10] The Rafaeli Affidavit includes additional refutations. (*See* Doc. 8.) For instance, Rafaeli avers that:

averments,[11] she argues that the Court still may exercise personal jurisdiction over Rafaeli because: (1) he has not explicitly refuted allegations in the Amended Complaint that his conduct outside of Florida was knowing, "willful," and avaricious; (2) he is the owner of a "luxury home" in Florida; (3) he will suffer no burden from litigating in Florida; and (4) the interests of justice favor resolution of all of Plaintiff's claims in this action. (*See* Doc. 55, pp. 13–15, 18–20.) Again, the Court disagrees.

First, the Court rejects Plaintiff's attempt to equate her claims to intentionally tortious conduct. Negligence and strict liability are not intentional torts, and the Amended Complaint includes no allegations that Rafaeli specifically directed his acts toward Florida with the expectation that harm to Plaintiff in Florida would result. (*See* Doc. 52.) Such circumstances are required before courts will exercise personal jurisdiction

---

> 16. As the President and CEO of Radiancy US, and the CEO of PhotoMedex, I had no involvement in the process of creating the Product's labels, including the warnings contained in the labels. Any work related to the advertising and distribution of the Product by Radiancy US, was solely in my capacity as the President and CEO of Radiancy US. I had no personal input or involvement beyond these positions, and provided no personal input or oversight of the creation of the Product's labeling and warnings which were, in fact, created by personnel at its manufacturing company, Radiancy Israel.

(Doc. 8, ¶ 16; *see id*. ¶¶ 15, 19–22, 26, 27 (averring that any work Rafaeli performed "was as a corporate officer or employee of the distributor of the Product").) These averments do not help Rafaeli because the referenced "Product" is *not* the Device—it is another hair removal product that Rafaeli contends is entirely distinct from the Device. (*See* Doc. 39-7, ¶¶ 11, 25; *see also* Doc. 5.)

[11] Plaintiff concedes that "Rafaeli never physically 'entered' Florida to commit a tortious act." (Doc. 55, p. 18.)

over a defendant who commits a tort while physically outside of Florida. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (confirming that a defendant's physical presence in Florida is not required to meet the commission of a tort requirement of FLAS when the tort is intentional and is expected to cause injury in Florida); *Rensin v. State, Office of Atty. Gen., Dep't of Legal Affairs*, 18 So. 3d 572, 575–76 (Fla. 1st DCA 2009) (summarizing intentional tort cases where the corporate shield doctrine was disregarded); *see also Calder v. Jones*, 465 U.S. 783, 789–90 (1984) (explaining the test to apply in cases involving intentional torts).

The Court also rejects Plaintiff's argument concerning Rafaeli's ownership of the Condominium because Plaintiff's claims do not arise from or relate in any way to the Condominium. The law is clear that, when specific jurisdiction is at issue, the Court must disregard forum contacts that are not connected to the plaintiff's causes of action. *See Bristol-Myers Squibb*, 2017 WL 2621322, at *8.

Finally, the Court does find that Plaintiff's arguments concerning the burden to Rafaeli and the interests of justice are compelling.[12] Nonetheless, as recognized in a recent Supreme Court decision, those interests cannot overcome the federalism concerns served by enforcing specific jurisdiction requirements:

---

[12] The burden of litigating in Florida for Rafaeli is minimal given that he will be participating in this action regardless of whether he is a party. (*See* Doc. 44, p. 25 (identifying only Rafaeli as having "discoverable information").) On the other hand, Florida has a substantial interest in adjudicating this dispute given that Plaintiff resides in Florida. Further, the interest of the interstate judicial system in obtaining convenient and effective resolution of disputes would be served by exercising personal jurisdiction over Rafaeli because the Court is already considering Plaintiff's claims against Radiancy, and it makes little sense to largely duplicate these proceedings in a New Jersey court.

> [e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)). "[R]estrictions on personal jurisdiction 'are more than a guarantee of immunity from inconvenient or distant litigation. They are consequence of the territorial limitations on the power of the respective States.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)).

Here, restrictions on personal jurisdiction preclude this Court from considering Plaintiff's claims against Rafaeli and Parent Company. If Plaintiff wishes to pursue such claims she must bring them in another forum. The MTD is due to be granted.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants Dolev Rafaeli's and Photomedex, Inc.'s Motion to Dismiss the First Amended Complaint and Memorandum of Law in Support Thereof (Doc. 53) is **GRANTED**.

2. Plaintiff's claims against Defendant Photomedex, Inc. and Dolev Rafaeli are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

3. The Clerk is **DIRECTED** to terminate Photomedex, Inc. and Dolev Rafaeli as parties to this action.

4. This action will proceed with respect to Plaintiff's claims against Defendant Radiancy, Inc.

**DONE AND ORDERED** in Orlando, Florida, this 22d day of June, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:

Counsel of Record